**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,               )<br>            Plaintiff,           )<br>                                        )<br>vs.                                     )<br>                                        )<br>Joana Sanchez-Coptino,                  )<br>            Defendant.          )<br>_____) | No.  CR 17-284-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of Sanchez-Coptino's Sentence to be Served on Home Confinement (Docs. 79, 84) filed by Joana Sanchez-Coptino ("Sanchez-Coptino").[1] The government has filed a response (Doc. 86) and Sanchez-Coptino has filed a reply (Doc. 87).

*Background*

Sanchez-Coptino pleaded guilty pursuant to a plea agreement to one count, Importation of Methamphetamine, of a four count indictment.  This offense involved approximately 20 kilograms of methamphetamine concealed in a vehicle driven by Sanchez-Coptino.  The plea

---

[1] The caption of the Motion states Sanchez-Coptino's first name as "Joanna." However, the true first name of Sanchez-Coptino, as stated in the record, is "Joana." *See* January 31, 2017, Minute Entry (Doc. 2).

agreement provided for a sentencing range of 97 to 121 months imprisonment, which included a government sponsored downward departure from the advisory guideline range of 188 to 235 months. The plea agreement allowed defense counsel to request a variance from the guideline range. The Court found Sanchez-Coptino's age and conduct pre-trial (Sanchez-Coptino absconded but then turned herself in), Sanchez-Coptino's status as a mother of two young children), the requirement to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and to avoid unwarranted sentencing disparities supported a variance. Sanchez-Coptino was sentenced to a 36 month term of imprisonment to be followed by three years of supervised release.

Sanchez-Coptino has served more than half of her good-time sentence and has an anticipated release date of August 8, 2021. Sanchez-Coptino submitted March 25, 2020, May 6, 2020, and July 23, 2020, requests for compassionate release, the first two based on COVID-19 and the third based on the contraction of COVID-19 by Sanchez-Coptino's child. Although the government agrees Sanchez-Coptino exhausted her administrative remedies as to the first request, the government does not agree Sanchez-Coptino has exhausted her administrative remedies as to the second request (the government does not address the third request). In her reply, Sanchez-Coptino states she received a duplicate of the first denial letter as to her second request and an August 10, 2020, denial as to the third request.

*First Step Act*

The First Step Act went into effect on December 21, 2018. See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted). That section now provides that a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a

failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . " 18 U.S.C. § 3582(c)(1)(A).

*Exhaustion of Remedies*

The statute clearly imposes an administrative exhaustion requirement before seeking review by a district court. As another court summarized:

> The amended statute allows a defendant to file a motion for compassionate release upon the earlier of two dates. First, a defendant can file a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." *Id.* Second, a defendant can file a motion upon "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility." *Id.* Courts have recognized these two options impose a mandatory requirement that a defendant submit a request to the warden of her facility before filing in court. *See, e.g., United States v. Solis*, No. CR 16-015-CG-MU, 2019 WL 2518452, at *2 (S.D. Ala. June 18, 2019) (denying request because defendant did not request compassionate release from Bureau of Prisons); *United States v. Dowlings*, No. CR413-171, 2019 WL 4803280, at *1 (S.D. Ga. Sept. 30, 2019). But courts have disagreed on what, if anything, a defendant must do beyond that initial request and before filing in court.

*United States v. Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *1 (D. Ariz. Nov. 8, 2019).

However, "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility" language has not been uniformly interpreted when a warden timely denies a request.

> In at least two other districts, the government has adopted this first reading and argued a defendant need not do more than wait 30 days before proceeding to court. *United States v. Spears*, 98-cr-208 (D. Ore. Sept. 30, 2019) (filing by government); *United States v. Robinson*, 16-cr-5307 (W.D. Wash. July 8, 2019) (filing by government). And judges in the Western District of Washington and the Eastern District of Tennessee have agreed defendants are entitled to proceed to court once 30 days pass, regardless of any action taken by the wardens. *United States v. Robinson*, 2019 WL 2567356 (W.D. Wash. June 21, 2019) (staying case for exactly 30 days after date warden received her request); *United States v. York*, No. 3:11-CR-76, 2019 WL 3241166, at *5 (E.D. Tenn. July 18, 2019) (defendant entitled to file motion with court after warden denied request even though defendant did not pursue administrative appeal).

*Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *2. Other courts, however, have interpreted the language to mean that the statutory language does "not alter the requirement that prisoners must first exhaust administrative remedies before seeking

judicial relief." *United States v. Koch*, No. 201CR083JMHEBA2, 2019 WL 3837727, at *2 (E.D. Ky. Aug. 14, 2019); *Weidenhamer*, No. CR1601072001PHXROS, 2019 WL 6050264, at *4 ("it is appropriate to require a defendant to pursue an administrative appeal" if a "warden acts on [a] request in a timely manner").

Here, the government has agreed Sanchez-Coptino has exhausted her administrative remedies as to the first request. Yet, there is no information before the Court that Sanchez-Coptino appealed this administrative denial. In other words, the government appears to adopt the position a defendant may seek court review without a need to pursue an administrative appeal. In light of the government's position and the opaque nature of an appeal requirement, the Court finds Sanchez-Coptino has exhausted her administrative remedies as to the first request.

Further, Sanchez-Coptino asserts she received a duplicate response as to her second request.[2] Additionally, Sanchez-Coptino has provided a copy of the warden's response to the third request. Consistent with the government's position as to the first request, the Court finds Sanchez-Coptino has exhausted her administrative remedies as to the second and third requests.

*Compassionate Release*

Sanchez-Coptino moves for compassionate release based on the incapacitation of her children's caregiver and her mother's need for a dedicated caregiver for Sanchez-Coptino's children. A sentencing court may grant such a request where "extraordinary and compelling reasons warrant the reduction[,]" the "defendant is not a danger to the safety of any other person or to the community" and the "reduction is consistent with [applicable] policy statement[s]" issued by the Sentencing Commission. United States Sentencing Guidelines

---

[2] Even if Sanchez-Coptino did not receive a duplicate response, the conclusion would be that the warden did not timely respond to the request. *See e.g. United States v. Early*, No. 7:02-CR-10125-002, 2019 WL 4576281, at *1 (W.D. Va. Sept. 20, 2019) (defendant was entitled to file motion because warden did not act on request within 30 days).

- 4 -

§ 1B1.13. The Application Notes of that guideline provides, in relevant part, that extraordinary and compelling reasons exist if:

> (C) Family Circumstances.—
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

U.S.S.G. 1B1.13, App. Notes.

While non-binding, the Court considers the BOP Program Statement regarding a request based on the incapacitation of a spouse and/or the incapacitation of the family member caregiver. *See*, *e.g., United States v. Bolden*, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020), *citing United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"). The applicable Program Statement provides, in part:

> 5. REQUESTS BASED ON NON-MEDICAL CIRCUMSTANCES – DEATH OR INCAPACITATION OF THE FAMILY MEMBER CAREGIVER.
>
> The criteria for a RIS request may include the death or incapacitation of the family member caregiver of an inmate's child, e.g., RIS requests from inmates whose biological or legally adopted child or children ("child") are suddenly without a family member caregiver due to that caregiver's death or incapacitation.
>
> For these requests, "child" means a person under the age of 18 and "incapacitation" means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child.

BOP Program Statement § 5050.50(5).[3]   The guidance states that information and

---

[3] Incapacitation is defined differently under other circumstances. *See e.g.*, BOP Program Statement 5050.50(6) ("incapacitation" means an inmate's spouse or registered partner has "suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or . . . A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function),

- 5 -

1  documentation must be provided showing the incapacitation of the caregiver, that the
2  caregiver is the only family member capable of caring for the child, verifiable documentation
3  that the inmate is the parent of the child, verifiable documentation providing name and age
4  of the child, and a release plan. *Id*. at § 5050.50(5)(a). Sanchez-Coptino argues the
5  "warden's narrow reading of compassionate release to exclude parents in need of caregivers"
6  has appropriately been rejected by courts. Motion, p. 8, *citing United States v. Bucci*, 409
7  F. Supp. 3d 1, 2 (D. Mass. 2019).

Here, Sanchez-Coptino asserts her mother, the appointed legal guardian for Sanchez-Coptino's children, works full-time to support the children and needs a caregiver to take care of the children. The children's caregiver has already contracted COVID-19 and re-exposure will put her at increased risk of complications given her medical condition. Sanchez-Coptino's daughter suffers from heart abnormality and both children are exposed to greater risks by contact with the caregiver. Additionally, Sanchez-Coptino's daughter tested positive for COVID-19 after the caregiver contracted the virus. Sanchez-Coptino asserts:

> There is no one who can serve as a dedicated caregiver who will stay in the home, and not go to another home, besides Ms.Sanchez-Coptino. Because of [her daughter's] delicate health condition, and the rapid spread and dangers of Covid-19, it would be very dangerous to expose [her daughter] in a daycare or have a caregiver - who may be infected and is exposed to others outside the home increasing the risk that [her daughter] will be infected again - come in to care for her while [her mother] works. Ms. Sanchez-Coptino will be a dedicated caregiver while her mother works. Ms. Sanchez-Coptino, unlike the woman who already infected [her daughter], will not be going to another home where others will expose her to the virus. Ms. Sanchez-Coptino will stay in the home the entire time thereby severely cutting the risk of infection.

Motion, pp. 2-3.

While the Court agrees with Sanchez-Coptino that the standard used by BOP is too narrow, the Court finds Sanchez-Coptino has not shown extraordinary and compelling reasons for compassionate release. *See United States v. Flowers*, No. 3:16-CR-00035-SLG, 2020 WL 4495454, at *3 (D. Alaska Aug. 3, 2020 (defendant bears the burden of establishing "compelling and extraordinary reasons exist that justify compassionate release").

---

but may not be confined to a bed or chair.)

Both the caregiver and at-heightened-risk daughter have already contracted COVID-19 and have presumably recovered; indeed, Sanchez-Coptino has submitted correspondence from a physician indicating the daughter of Sanchez-Coptino is symptom free and well. *See* Reply, Ex. E, June 19, 2020, El Rio Health correspondence (Doc. 84-5). Sanchez-Coptino's release would not affect these historical facts. Further, the caregiver is presumably not incapacitated at this time. Moreover, Sanchez-Coptino has not shown there are no other caregivers available to care for the children. The Court also considers that it is not known how great the risk is for re-contraction of COVID-19 (as to either the caregiver or Sanchez-Coptino's daughter). *See e.g.,* Centers for Disease Control Coronavirus FAQ's, https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last accessed 9/11/2020) ("Having antibodies to the virus that causes COVID-19 might provide protection from getting infected with the virus again. If it does, we do not know how much protection the antibodies might provide or how long this protection might last."). While it appears Sanchez-Coptino's release would ease the care of her children, that does not present extraordinary and compelling family circumstances warranting compassionate release.

Even if the Court found that extraordinary and compelling reasons had been demonstrated by Sanchez-Cotino, the Court would also need to consider the § 3553(a) factors before determining whether compassionate release is appropriate. Sanchez-Coptino's history indicates she has been the victim of abuse and may benefit from counseling; Sanchez-Coptino points out that the facility in which she is housed does not offer any programming to address this need. However, the circumstances of the offense indicate Sanchez-Coptino knew she was carrying drugs in the vehicle, knew the exact place to deliver the vehicle, and appears to have been a routine drug courier. Further, although Sanchez-Coptino eventually turned herself in, she did abscond prior to sentencing. Indeed, the plea agreement in this case considered this uncharged conduct. Additionally, the sentence imposed in this case was significantly below the advisory guideline range even with the government sponsored departure. While the imposed sentence adequately reflected the seriousness of the offense, promoted respect for the law, provided a just punishment for the offense, and provided an

1 adequate deterrence to criminal conduct, a further reduction of the sentence would not further 2 these goals. The Court also considers that a reduced sentence would result in sentence 3 disparities among defendants with similar records who have been found guilty of similar 4 conduct. Lastly, in its discretion, the Court declines to find compassionate release is 5 warranted in this case. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) 6 (holding district court did not abuse its discretion by denying compassionate release despite 7 defendant's eligibility for that relief).

8 Sanchez-Coptino also argues the Court possesses the discretion to determine "whether 9 other reasons, or a combination of reasons, present extraordinary or compelling grounds for 10 compassionate relief, with guidance from the policy statement set forth in Guideline 11 §1B1.13." Reply (Doc. 87), p. 3. Compassionate release takes "on added weight because 12 of the COVID-19 virus raging across the globe." *Esparza*, 2020 WL 1696084 at *2. 13 "[D]espite BOP's best efforts, the virus [may] continue to breach prison walls[,]" *United* 14 *States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 15 2020); *see also,* BOP Implementing. Modified Operations, 16 https://www.bop.gov/coronavirus/covid19_status.jsp, BOP Program Statement No. 6190.04, 17 Infectious Disease Management (June 3, 2014), 18 https://www.bop.gov/policy/progstat/6190_004.pdf; BOP Health Services Division, 19 Pandemic Infl. Plan (Oct. 2012), https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. 20 Although Sanchez-Coptino does not allege that she suffers from any underlying medical 21 condition that would put her at risk for severe illness, she argues she is likely to contract the 22 virus while incarcerated. While Sanchez-Coptino has presented a "serious concern over the 23 existence of the COVID-19 pandemic, which poses a general threat to every non-immune 24 person in the country[,]" *United States v. Hamman*, No. 3:16-CR-185-SI, 2020 WL 3047371, 25 at *5 (D. Or. June 8, 2020), the Court, in its discretion, finds this alone does not warrant 26 compassionate release. Further, the Court finds, in its discretion, that a combination of 27 Sanchez-Coptino's family circumstances and the threat of COVID-19 to her as an inmate 28 does not warrant compassionate release.

Accordingly, IT IS ORDERED the Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582 (c)(1)(A)(i) and Authorizing Any Remaining Portion of Sanchez-Coptino's Sentence to be Served on Home Confinement (Docs. 79, 84) is DENIED.

DATED this 17th day of September, 2020.

Cindy K. Jorgenson
United States District Judge